*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re D. SMITH-TAYLOR, Minor.

UNPUBLISHED
May 23, 2024

No. 367845
Wayne Circuit Court
Family Division
LC No. 2019-002165-NA

Before: BORRELLO, P.J., and SWARTZLE and YOUNG, JJ.

PER CURIAM.

In this child-protective proceeding, respondent-mother, D. Smith-Taylor, appeals as of right the trial court's order authorizing the removal of her minor child, DST, from her care. Respondent challenges the evidentiary support for the removal order and the sufficiency of the trial court's factual findings. Because petitioner, the Department of Health and Human Service ("DHHS"), presented sufficient evidence to warrant the child's removal and the court made the requisite findings to justify its decision, we affirm.

## I. BACKGROUND

Respondent has four children, DLS, DES, DS, and DST, but only the order removing DST, the youngest child, is at issue in this appeal. Nonetheless, events related to the three older children are also relevant here.

The family has been involved with Children's Protective Services (CPS) for more than five years. In 2019, respondent was living with her then-husband, E. Smith-Taylor (hereafter "the former husband"), and their two children, DLS and DES. DS and DST were not yet born. Sometime in October 2019, respondent threatened the former husband with a knife after she smoked marijuana that was allegedly laced with another substance. The former husband successfully petitioned the court for respondent to be evaluated at a mental health facility. While en route, respondent fled from the ambulance transporting her to the facility. Four days later, she was found in a vehicle on the side of the road. She was incoherent and DES, then only three months old, was in the backseat of the vehicle. Respondent was admitted to a mental health facility, and DLS and DES remained under the former husband's care.

While under the former husband's care, DES was hospitalized with severe physical injuries, including a skull fracture, bilateral subdural hematomas, anoxic brain injury, liver lacerations, fractured ribs, and retinal hemorrhages. Because DES's injuries were indicative of child abuse and the former husband's reports were inconsistent, DHHS petitioned the court to terminate his parental rights. This petition also requested, regarding respondent, that the court remove the children from her care, take temporary custody, and order respondent to participate in reunification services.

At a December 2019 preliminary hearing, the referee found, among other things, that respondent suffered from " 'significant and long term, untreated, mental illness' that rendered her incapable of providing proper care and custody to the children." The referee also found that the children were at risk of harm in respondent's care and, specifically, that respondent would be unable to protect the children from the former husband. The trial court adopted the referee's findings, removed the children from respondent's care, and ordered DHHS to make reasonable efforts to reunify respondent with her children.[1]

Shortly after the preliminary hearing, DHHS filed an amended petition requesting that the court terminate respondent's parental rights to DLS and DES at the initial disposition. After DS was born several months later, a similar petition was filed regarding this child. The petitions were combined and the court took jurisdiction over the three children on the basis of respondent's *nolo contendere* pleas. In February 2021, after additional hearings, the court entered an order terminating respondent's parental rights to DLS, DES, and DS. This Court affirmed that decision in *In re Smith-Taylor,* 339 Mich App 189; 981 NW2d 511 (2021), rev'd 509 Mich 935 (2022), but our Supreme Court, in lieu of granting leave to appeal, reversed and remanded the matter to the trial court for further proceedings. *In re Smith-Taylor,* 509 Mich 935 (2022).

On remand, the trial court ordered DHHS to prepare a case service plan for respondent. Her three children remained in foster care, but respondent was allowed supervised visitation. Approximately one year later in June 2023, respondent gave birth to DST, the child at issue in this appeal. DST remained in respondent's care for several weeks, but on June 27, 2023, DHHS filed a petition requesting that the court authorize the petition, take jurisdiction over the newborn child, and remove DST from respondent's home. The petition sought removal because remaining in respondent's care was contrary to DST's welfare. At the conclusion of a two-day preliminary hearing, the trial court, adopting the referee's recommendations, authorized the petition and removed DST from respondent's care. This appeal followed.

## II. ANALYSIS

Respondent contends that the trial court erred when it ordered the removal of DST from her care and custody. She argues that the evidence was insufficient to support a finding that remaining in her care was contrary to the child's welfare. Specifically, respondent asserts that she was making progress on the treatment plan implemented for her three other children and there was

---

[1] After the preliminary hearing, respondent and the former husband appealed the children's removal. This Court affirmed that order. *In re Smith-Taylor,* unpublished per curiam opinion of the Court of Appeals, issued August 20, 2020 (Docket Nos. 352407 & 352512).

no evidence that DST would be at risk of harm in her care. She therefore criticizes the court's "primar[y] reli[ance] upon the fact that [respondent's] other children were in foster care and that she was still in the midst of working on her Treatment Plan." Respondent also argues that the trial court failed to make the required factual findings necessary to order the removal under MCL 712A.13a(9) and MCR 3.965(C)(2).

We review for clear error a trial court's factual findings regarding grounds for removal. *In re Benavides*, 334 Mich App 162, 167; 964 NW2d 108 (2020). A finding is clearly erroneous if the reviewing court "is left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted). Any error in a trial court's removal order is not grounds for reversal unless it would be inconsistent with substantial justice to permit it to stand. *In re Williams*, 333 Mich App 172, 185; 958 NW2d 629 (2020). We conclude respondent has failed to demonstrate clear error.

After conducting a preliminary investigation, DHHS may petition the circuit court to take jurisdiction over a child. *In re Ferranti*, 504 Mich 1, 15; 934 NW2d 610 (2019). Once a trial court receives the petition, it must hold a preliminary hearing and "may authorize the filing of the petition upon a finding of probable cause that one or more of the allegations are true and could support the trial court's exercise of jurisdiction under MCL 712A.2(b)." *Id.* If the court authorizes the petition, it must then decide "whether the child should remain in the home, be returned home, or be placed in foster care pending trial." *In re Benavides*, 334 Mich App at 167.

A trial court may place a child in foster care, but only after making the findings required by statute and court rule. MCL 712A.13a(9) governs the court's removal decision and states:

> The court may order placement of the child in foster care if the court finds all of the following conditions:
>
> (a) Custody of the child with the parent presents a substantial risk of harm to the child's life, physical health, or mental well-being.
>
> (b) No provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from the risk as described in subdivision (a).
>
> (c) Continuing the child's residence in the home is contrary to the child's welfare.
>
> (d) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.
>
> (e) Conditions of child custody away from the parent are adequate to safeguard the child's health and welfare.

MCR 3.965(C)(2) is identical in substance to MCL 712A.13a(9). "MCR 3.965(C)(2) and MCL 712A.13a(9) explicitly require that the trial court find *all* the factors prior to removing a child from a parent's care." *In re Williams*, 333 Mich App at 184. Although "the trial court must make a record of its findings as to each and every factor sufficient for this Court to conduct a meaningful

review," courts are "generally not obligated to articulate extensive findings regarding every conceivable detail." *Id*. at 183.

Here, during and after the two-day preliminary hearing, the referee made factual findings on the record. The referee explicitly stated that it was "clearly" contrary to DST's welfare to remain in the home and the child was at imminent risk of harm in respondent's care. The referee reasoned as follows:

> This child has two siblings never returned to the care and custody of their mother. Those children are under this Court's supervision, [with] dispositional review, permanency planning hearings, [and a] foster care specialist assigned [in] the case.
>
> . . . This child is at risk. The Court finds he's at risk. A judge of this Court has not found return of this child to the—of those children to the mother can be safely completed. This mother has competent counsel at every hearing, [and a] competent LGAL [for] those children. Her visits remain supervised. Even with services in place, the Court has not returned the children to her care. The mother has acted inappropriately at parenting time with the siblings, has assaulted, allegedly, a child, and the testimony is that the mother is not in a position to care for the sibling who was severely abused by the father.
>
> I'm not holding that against Mother, but Mother has a team assigned to her. She has failed to learn how take care of a child with issues, and that presents a continuing, ongoing risk of harm to this child.

Later, the referee elaborated, "You've been adjudicated previously as to other children. Those children have not been returned to your care. You say one thing, the department says another. That's what a trier of fact is for, and there's sufficient evidence to proceed." The referee also stated, albeit indirectly, that reasonable efforts to prevent removal were made. The referee recommended that DST be removed from respondent's home.

The trial court adopted the referee's recommendations and, in the written orders that followed, consistent with the oral rulings, the court found that all of the provisions of MCR 3.965(C)(2) and MCL 712A.13a(9) were satisfied. We acknowledge that the referee never explicitly discussed factors (b) or (e), and that the trial court's ultimate removal order merely checked the boxes related to each factor without making additional findings. But this record still satisfied the court's obligations under MCL 712A.13a(9) and MCR 3.965(C)(2). See *In re Kucharczyk*, unpublished[2] per curiam opinion of the Court of Appeals, issued April 18, 2024, p 4 (Docket Nos. 366664 and 366891) ("In this case, the question is whether the trial court made adequate findings supported by the record regarding each of the five factors in MCR 3.965(C)(2) and MCL 712A.13(a)(9). With regard to Factors (a) and (b), the trial court merely quoted the court rule and statute, without making additional findings. While respondents contend that merely checking the box on the removal order is insufficient, the trial court made findings that supported

---

[2] Unpublished opinions are . . . not binding authority but may be persuasive or instructive." *Haydaw v Farm Bureau Ins Co*, 332 Mich App 719, 726 n 5; 957 NW2d 858 (2020).

Factors (a) and (b) while addressing another factor. . . . These findings are not clearly erroneous and are supported by the testimony at the preliminary hearing.")

Specifically, the trial court here made basic findings regarding each factor that, as discussed below, were adequately supported by the referee's preliminary findings and the overall record. And even if the trial court's mere checking of the boxes regarding factors (b) and (e) without further explanation on the record was inadequate, reversal is unwarranted because the evidence supports both factors. See *In re Kucharczyk*, unpub op at 6-7 ("[W]ith regard to Factor (e), respondents are correct that the trial court failed to make any findings on the record and failed to check the relevant box on the order. . . . The evidence supports that the conditions [of placement away from the parent] were adequate. Even though the trial court failed to make explicit findings regarding Factor (e), reversal is not required because it would not be 'inconsistent with substantial justice' to permit the order to stand. MCR 2.613(A).").

Respondent primarily argues that there was insufficient evidence to support the trial court's finding that it was contrary to the child's welfare to remain in her care and custody. We disagree. The trial court's findings are supported by the evidentiary record.

The testimony established that respondent had a history of substance abuse, domestic violence, and untreated mental health issues related to a diagnosis of bipolar disorder. As a consequence, respondent's three other children were removed from her care in 2019. In April 2022, after our Supreme Court reversed the termination of respondent's parental rights to these three children, the trial court ordered respondent to comply with an extensive case service plan designed to improve her parenting skills, and to address her substance abuse and mental health issues. At the time of the preliminary hearing relative to DST, these three other children remained in foster care. The evidence further established that respondent had not successfully completed and benefited from her treatment plan. Further, the older children were never returned to respondent's care and her parenting time never progressed beyond supervised visits at the agency. From this evidence, the trial court could have reasonably concluded that the conditions that led to the court assuming jurisdiction over the other three older children had not been rectified.

There was additional evidence that despite being offered a multitude of services, respondent's ability to safely and properly parent her children had not improved. That is, respondent had not benefited from the services offered. Respondent's conduct related to her severely disabled child strongly supports this conclusion.

The trial court did not blame respondent for the severe injuries to DES. It was undisputed that respondent was hospitalized and receiving treatment for suicidal thoughts when DES was severely physically abused by his father. While respondent was not to blame for the child's injuries, the court properly considered respondent's later actions and concluded that they reflected poorly on her ability to parent her children. There was testimony that respondent had been offered, but did not participate in, the necessary training that would enable her to care for DES's tracheostomy. Further, respondent refused to consent to medical treatment, including hip surgery, that would have relieved DES's pain and muscle rigidity. Similarly, respondent refused to consent to DES undergoing dental treatment. Respondent's conduct suggested that she was unwilling or unable to recognize DES's needs and act accordingly.

The evidence related to respondent's other children was relevant to assessing her ability to safely and properly parent DST, and it was proper for the court to consider this evidence when ruling on the request to remove DST from respondent's care. Specifically, the doctrine of anticipatory neglect recognizes that how a parent treats one child is probative of how that parent may treat other children. *In re Kellogg,* 331 Mich App 249, 259; 952 NW2d 544 (2020). The trial court properly evaluated respondent's potential risks to DST by considering respondent's treatment of his siblings.

Although the trial court removed DST from respondent's care primarily on the basis of the court's prior removal of her other children, this was not the only concerning circumstance. Respondent's conduct after DST's birth further suggested that she presented a risk of harm to his physical health and mental well-being. During a hearing relative to the other children, the court ordered respondent to inform DHHS of DST's birth. Respondent did not comply with this order, and DHHS learned of the birth five days after the fact. Respondent then apparently refused to permit the foster care worker to assess her home, she declined the assistance of a parent-partner, and she failed to attend the team decision meeting where DST's bests interests would be addressed. Respondent also refused a preliminary safety plan proposed by CPS.

There was also compelling evidence presented during the preliminary hearing that respondent continued to struggle with mental health issues. It was undisputed that respondent suffered from bipolar disorder and was previously hospitalized for suicidal thoughts. The evidence established that before her pregnancy, respondent's psychiatrist prescribed medication to address her mental health issues. However, respondent was taken off the medication during her pregnancy with DST, and she did not resume taking the medication postpartum. In a written correspondence admitted during the hearing, respondent's psychiatrist claimed that respondent had remained stable without the use of medication. However, respondent's treating therapist confirmed that respondent continued to struggle with mental health issues.

Although the therapist's testimony was generally favorable, the therapist admitted that respondent was currently experiencing a mental health crisis and further explained that she suffered from a lot of anxiety and stress. The therapist opined that respondent was "stable" simply because she had not been hospitalized, arrested, admitted to the crisis ward, or "had a full-blown episode of bipolar." Notably, the therapist testified that although she and respondent met once a month, they had recently been trying to increase the frequency of the appointments to at least every two weeks. The testimony of the therapist and respondent's "transitional navigator," coupled with the written opinion of the psychiatrist, confirm that respondent was receiving an inordinate amount of assistance to simply function day-to-day, even without the children in her care.

From this evidence, it was reasonable for the trial court to conclude that respondent, at the time of the preliminary hearing, continued to struggle with maintaining her stability. And given all the evidence discussed to this point, the trial court could have reasonably concluded that DST would not be safe in respondent's care and that removal was the only avenue to safeguard the child. Thus, the evidence supported the trial court's findings regarding factors (a), (b), and (c).

Respondent also asserts that DHHS failed to make reasonable efforts to avoid removal and that the trial court erred when it found otherwise. However, she fails to explain this argument or cite to any authority beyond merely stating that "reasonable efforts were not made to prevent

removal in this case pursuant to MCL 712A.13a(9), MCR 3.965(C)(2) . . . ." See *Bronson Methodist Hosp v Mich Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012) ("An appellant may not merely announce his [or her] position and leave it to this Court to discover and rationalize the basis for his [or her] claims, nor may [an appellant] give [an issue] only cursory treatment with little or no citation of supporting authority.") (quotation marks and citation omitted).

Nevertheless, this assertion is unsupported by the record. Regarding DST's siblings, respondent was offered a case service plan after our Supreme Court remanded the matter to the trial court in April 2022. Services included, among other things, parenting education classes, parenting time, and mental health services. After DST's birth, the foster care worker attempted a home assessment, but allegedly respondent refused. Similarly, respondent refused a proposed safety plan and a parent-partner, and she did not attend the team decision meeting.[3] Respondent was also offered services through an Infant Mental Health program, which she did participate in. Considering the record, there was evidence to support factor (d), and the trial court did not err when it found that reasonable efforts had been made to prevent DST's removal from the home.

On appeal, respondent does not appear to specifically challenge the trial court's finding regarding the last factor, namely, that "conditions of child custody away from the parent are adequate to safeguard the child's welfare." See MCL 712A.13a(9). In any event, the court's finding in this regard is not clearly erroneous. According to the court's August 14, 2023 order, DST was placed with his siblings after the removal. There was no suggestion that the placement was inadequate to safeguard DST's health and welfare. Indeed, it would be difficult to conclude otherwise considering that his siblings continued to be placed in the same home with the court's approval.

In sum, the court's oral rulings and written orders confirm that it considered all five requirements of MCL 712A.13a(9). Further, the court's findings of fact are supported by evidence presented during the preliminary hearings. Therefore, we are not left with a definite and firm conviction that a mistake was made. The trial court did not clearly err when it removed DST from respondent's home.

Affirmed.

/s/ Stephen L. Borrello
/s/ Brock A. Swartzle
/s/ Adrienne N. Young

---

[3] Notably, Respondent's own brief on appeal, in the statement of facts, while stating that CPS "was able to preform a home assessment" after DST's birth, acknowledges that "[DHHS]'s stated reasonable efforts to prevent removal was [sic] to put in place services for [respondent], but she did not attend the [team decision meeting] meeting to discuss same and she would not meet with the parent-partner."